is going to be the third justice that will help to decide this case. He has read the briefs and the materials, and he will listen to the tapes which you will be recording, but just as Connors and I are sitting here today. So when the case is called, please approach the podium and say your name. And this is a microphone that records, but it doesn't amplify, so keep your voice up. Remember, we've read the materials very carefully, so I would encourage you to do that. Thank you. I would encourage you to get to your most important or strongest argument first. The appellant should save a few minutes for rebuttal. You will each have 20 minutes. You don't have to use all of it. We won't hold it against you if you use less. And whenever you're ready, please call the case. Case number 16-1085. People v. DeJuan Pratt. Good morning, or good afternoon. Emily Hartman for the State Appellate Defender for DeJuan Pratt. Good afternoon. Assistant State's Attorney Whitney Bond on behalf of the people of State Illinois. May it please the Court? Yes. Okay. Please say your name again. Remember, this is recording, and it's going to record at the beginning of each segment, so it's good to say your name again. Of course, Your Honor. Emily Hartman with the Office of the State Appellate Defender for DeJuan Pratt. I have no argument. This is what defense counsel announced to the entire courtroom at the end of a double murder trial, where there were no eyewitnesses, the State's evidence was circumstantial, and none of the forensic evidence matched DeJuan Pratt, but some of it matched unknown individuals. Right after the State finished a long argument, and the Court told the jury it would hear from the defense, counsel said, Judge, I have no argument. The Supreme Court has said, you know, a defendant is not required to show that counsel's deficient conduct more likely than not affected the outcome of the case, but rather that he establish a probability sufficient to undermine confidence in that outcome. Counsel's decision to waive closing argument here is especially baffling, given that there was a lot that counsel could have argued to the jury. The State's theory of the case is that DeJuan Pratt was guilty of murder because there was a mountain of evidence he committed theft. Counsel could have argued, to start with, that Pratt was a terrible thief. He left such an extensive trail of evidence of everything he stole. And for somebody who was such a bad thief, he left no physical evidence tying him to the murders, the fires, but physical evidence was there tying somebody else to the crimes. There was a lighter found with some unknown person's DNA on it, and a trail of blood going down the back stairs that didn't match. So counsel, this recap for us, what's the commonly understood purpose of a closing argument? The purpose of a closing argument is to, well, I can, it is the, only in closing argument, I'm paraphrasing the Supreme Court, can counsel and the State argue the inferences to be drawn from the testimony, point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there might be a reasonable doubt of their client's guilt. And can't that be construed as trial tactic, not for giving a closing argument? So as this Court noted in Wilson, it's a rare case where failing to give a closing argument amounts to a silent trial strategy. And given the evidence here, now is it the holding in Wilson, is there a comment by the Court that wrote that? So in the strategy section of Wilson, they held that it couldn't be trial strategy because of the evidence in Wilson. There was no reasonable strategy given the evidence in that case that justified waiving closing argument. Well, there were two eyewitnesses in that case, and there was a distinguishing difference between the testimony of the eyewitnesses and Wilson, correct? There was actually three eyewitnesses who identified him and a fourth who saw the defendant right before the crime. So there were discrepancies in those testimonies. There were some inconsistencies, but there were at least a couple of them that, you know, identified him straight off and didn't have any changes in the testimony. Well, my point is, is Wilson different than the facts that we have here? So Wilson had more. What discrepancies or inconsistencies are there in the testimony? Of course. Wilson had multiple eyewitness IDs, so it was – there were no eyewitness IDs here. There's no physical evidence. Even though they, you know, they combed the apartment and they found physical evidence, none of it connects to DeJuan Pratt. The evidence is only circumstantial. In Wilson, there were multiple eyewitnesses, so that's different from here in the sense that Wilson had arguably stronger evidence than in this case. There was a lot of circumstantial evidence, but that was evidence that Mr. Pratt stole and a lot of evidence of theft. But, again – So are you suggesting that the evidence in this case that it was either very thin or that it was a close case? I'm not sure what you're implying. The counsel – the standard doesn't have to be that close. As this Court said in Wilson, even if acquittal is far from certain – I think that DeJuan Pratt had a reasonable shot of acquittal if counsel had done a closing argument, and especially if counsel hadn't gotten up and said in front of the entire courtroom, I had no argument, after presenting no evidence. That was tantamount to admission of guilt. Of course, the jury found him guilty after counsel stood up and said that. So you're contending that the failure to give a closing argument is the reason that the defendant was found guilty as opposed to the many pieces of evidence that the State put forward? I'm contending that we don't know, but that had counsel given a closing argument, he had a chance of an acquittal. Strickland doesn't require more than 50 percent. You know, this Court, quoting the Seventh Circuit in Wilson, said, you know – On what basis would you quantify his chance of acquittal at 50 percent or more than 50 percent based on a closing argument? Is that what you're suggesting? No, I'm saying the standard doesn't require more than 50 percent. The standard is lower than 50 percent. It just needs to be a reasonable chance at an acquittal or undermining confidence in the outcome. I'm kind of trying to get you to – I'm trying to understand the quantification. So you're thinking that there was a reasonable chance of acquittal had a closing argument been made in this case. Is that your argument? Yes, and a reasonable chance is defined by the Supreme Court. It's not, you know, more likely than not. It's just a chance that undermines confidence in the outcome of the case. Counsel, let me ask you, in the opening argument that was made by the defense counsel, I think you mentioned in your brief that it was said 24 times that he will testify. Is that true? The State mentioned in its brief that counsel promised what the jury would hear 24 times. It wasn't 24 times that he will testify. Counsel said you don't have to – he doesn't have to testify. You can't hold that against him, but you're going to hear from him. So that implies he's going to testify. The State's position is that that could have been referring to that you're going to hear the video. You could have heard his version of this from the video. Well, that's a reasonable interpretation. It is reasonable, but so is that he's going to testify. And so a closing argument would have been an opportunity. But you didn't say 24 times he's going to testify, he's going to testify. No. She said you can't hold it against him, but you're going to hear from him. But those weren't in the same sentence, were they? Yes, yes. It was – I have a quote, actually, in here. She said you will not hold it against the defendant if he does not testify. You can't hold it against him, but you're going to hear from Dwan Pratt. So it's the same sentence, yes, with but in there. And that also implies he's going to testify, given the connection. But maybe it meant the video. A closing argument would have been a perfect chance to say you did hear from him, you saw the video, but counsel didn't do that. Counsel, let's talk about should the work that was done by defense counsel be viewed as a whole or just based on what the counsel did in closing argument. So we're not arguing that the chronic standard applies. We're not asking this Court to presume prejudice because counsel wholly failed to subject the State's case to meaningful adversarial testing. The analysis is a Strickland standard. So the – just that the counsel's failure in, you know, not giving the closing was prejudicial to Mr. Pratt. Well, my question is mostly did counsel seem to be not good at the rules of procedure? Was counsel bad at cross-examination? Was there anything about her legal arguments that were flawed? What was it other than this lack of closing argument? So the lack of closing argument combined with the need for a closing argument in this case, the failure to explain that comment in opening he's going to testify, the failure to bring the jury's focus back to the law in an emotional case, failure to point out that the State's evidence was primarily evidence of theft, not a murder, failure to explain the course of interrogation environment, how long. You know, this is an edited interrogation video, so he had been in – most of it came after he'd been in custody for over 28 hours, but the jury only sees five hours. So counsel needed to remind him of that to explain. Counsel, I looked at every minute of that tape. Did he seem like he was under any stress at any time? On the tape? I suppose everybody responds differently to stress. He was calm on tape. What did you say? He was calm, but some people go the other way with stress, and they're really calm. So it's – I can't say whether he was under stress or not. But are we – can we speculate as to what counsel's reasons were for not giving a closing? Is that appropriate? This Court, you can – speculation as far as if there would – you can ask if there was any strategic justification that could have been – that counsel could have possibly had a strategic justification. And under the facts of this case, there is no strategic justification for what counsel – for not giving a closing argument. There's no reason to do that in this case. Yeah. Have you found any cases where the Court found that not giving a closing argument by defense counsel was appropriate? No. None whatsoever? That it was appropriate to not give one? No. I haven't found a case that said that that was the right call in this situation. Even as far as trial tactics? You've not found those cases at all? I'm sorry. Even as far as? Trial tactics. Strategies. There's not very many – well, there aren't very many cases where counsel didn't give a closing. So there's not very many cases out there at all. There are cases where the Court has acknowledged that as a matter of trial strategy, a closing argument may not be appropriate under the facts of that particular case. So I don't – I'm not saying that this case is such a case, but there are cases out there that say that. I just want you to be aware of that. As far as if it's – if it didn't meet the second prong of Strickland, maybe it wasn't prejudicial not to give the closing argument. I just – I didn't – I don't know of a case where they said it was a good idea. As a matter of trial strategy, counsel, courts of this State have acknowledged that as a matter of trial strategy under the facts of a particular case, not giving a closing argument is not necessarily ineffective assistance of counsel. So I misunderstood your question. So yes, that it's not necessarily ineffective assistance. I don't know of a case where they said, well, this is actually a great idea in this case. I didn't know whether they approved of the strategy, just that maybe if you don't meet the second prong of Strickland, the court doesn't need to address the first prong, so. Well, courts, we don't rule like that. We don't say whether it's a great idea or not. So I misunderstood. What we say is either it's ineffective assistance of counsel or it's not. And I am telling you that there are instances where courts have found that failure to give a closing argument as a matter of trial strategy is not ineffective assistance of counsel. Correct. I misunderstood your question. And what's the showing of prejudice by the defendant here? So in this case, the prejudice is from looking at all of the different things that counsel could have argued, rebutting the State's inferences. You know, the jury only heard the State's version of events, the State's version of what inferences it should draw. So the only inference the jury could make was that the State's version was correct because counsel had nothing to say. Reminding the jury of all of the evidence the State didn't have. Explaining the interrogation. Now, wait a minute. How could she do that? Because they didn't have evidence tying to the murder. They had a lot of evidence of the theft. And most of the three days of evidence was primarily about theft. So counsel needed to bring their attention back to that and remind them, you know, there is this blood trail down the back stairway from an unknown male. Was it a droplet or a trail? It was a trail. There's a video showing it go down. And the police called it a trail and then changed it to droplet after the DNA came out. Was the trail five droplets long? I don't know. I don't know. So both are in evidence, droplet and trail. Yeah. But there's somebody, there's, either way, there's an unknown male's blood on the back stairs. That's the closest exit to Mr. Brown's room where the bodies were found. There's also somebody else's DNA in that lighter that was found in the apartment. It wasn't Pratt's. Or anybody that lived there. Counsel also, I mean, this is an emotional case. Remind the jury of the duty under the law. Bring their attention back to the law. Explain the interrogation. Explain the change in that you're going to hear from him even to say, hey, you heard from him on the video, rather than saying nothing. And certainly not, at least not standing up in front of the entire courtroom saying I have no argument after presenting no evidence. That sounds like counsel's admitting guilt to the jury. So this is a but-for standard, you understand. But-for counsel's deficient performance in saying no closing. Yes. That's a standard we have to look at. Yes. There was a reasonable chance of an acquittal in this case. The-in particular, if counsel wasn't going to do a closing, certainly there were other ways to do that rather than standing up again in front of the courtroom and making that announcement in the end.  He did the court asked him because the court was so surprised and he agreed. But it's not his decision to make. He is, you know, he's not-he didn't have much of a record, so we don't even know if he understood what the importance of closing was. But he's not an attorney, and he's certainly not a murder task force trial attorney. He was an educated man. He was a college-educated man. He had a college degree, but if there's no evidence he knew anything about the law. Well, I'm just saying, was there any evidence to show that he didn't know what a closing argument was? He doesn't have a record. So at least maybe he didn't understand the importance. But it's counsel's decision. It's counsel's strategic decision what to say, what witnesses to call. That's not one of the decisions that the defendant has any power over. So his agreement- Well, but they discussed it. He said, I know, I know. But it's not relevant because it's counsel's choice. Counsel can decide whether to do it. If he didn't want counsel to do one, counsel could say, no, I'm going to do it anyway. There's nothing that the defendant wishes. But he could have brought that to the court's attention. It could have. I don't know why he didn't. But it doesn't – I don't know that he knew he was allowed to speak up and say anything to the court either. It's counsel's – this is a murder trial. An experienced attorney was representing Mr. Fratt. It was her decision whether to do closing. And she did that. It's not Fratt's decision. If this Court doesn't have any more questions, I'll reserve the rest for rebuttal. Thank you. Good afternoon, Your Honors. Again, my name is Whitney Bond on behalf of the people of the State of Illinois. As it relates to the closing argument, strickling can't be interpreted to impose upon trial attorneys a specific list of tactics or practices that are prohibited in all instances. Defense counsel here had a very specific reason for deciding to waive her closing argument. And what was that? It could be as simple as just wanting to foreclose rebuttal, which is allowed. People Be Connolly has said that that is an appropriate tactic to take. And we – People Be Connolly, C-O-N-L-E-Y, I believe I cited it in my brief. When we think about the whole, we're talking about a defense attorney that has a large amount of circumstantial evidence against her client, as well as the defendant's five hours of videotaped statement. That videotaped statement came into evidence unrebutted. Defendant didn't take the stand. The jury heard that evidence. In the State's opening closing argument, it was for the most part pretty vanilla. I think we're all aware, and if we're not aware, in criminal matters and ones such as this where it's such a grave offense, there tends to be two parts. There's the opening closing argument and there's the rebuttal closing argument. Opening closing argument kind of lays out the foundation, tells the jury what they're going to hear in terms of instructions, gives them sort of a roadmap. What about the promise that you're going to be hearing from him, hearing from the defendant? Would the closing argument have been an opportunity to flesh out what she meant by that? As your opponent points out, saying something of the nature, well, he didn't testify himself. He doesn't have to, but you heard from him via the videotape or his statement or something of that nature. Wouldn't that have been an opportunity for the defense lawyer to do that? It certainly would. But here's the issue. With the State's opening closing argument, they did not mention the unknown assailant theory, that an unknown man forced his way into Kathy and Gary's apartment and in front of defendant, tormented and stabbed them before letting defendant flee. The State's opening closing argument didn't touch upon that theory at all. So at trial, the jury hears that an unknown person did this, that defendant wasn't responsible. Yes, he was a thief, but I didn't do it. That comes into trial unrebutted. Then when the State in their opening closing argument decides not to touch upon it at all, that could have very well been the trial strategy. Now if the defense attorney decides I'm going to waive my closing argument, that forecloses that rebuttal. That forecloses that fire and brimstone that's coming down the pipe because if she doesn't discuss it by waiving it, then now it's unchallengeable. So now the jury has heard it unrebutted during trial and unchallenged. Is that the only thing she could have talked about in closing argument? She certainly could have talked about the circumstantial evidence. That's all that she could also talk about. But the entire theory of her case is that somebody else did this. The chance is that she's going to go into it and only specifically discuss the circumstantial evidence and then open the door for criticism as to her theory of defense, which is the last word that the jury hears before they go off to deliberate. That would seem like it's a bad trial strategy. And what we do know about this record is that it's a reasonable strategy considering she's got on one hand circumstantial evidence, on another hand a videotaped statement of the defendant's own words saying I didn't do this. One that's unrebutted, one that's unchallenged, and also agreed upon by the defendant. The trial court, it did stun the trial court enough that once the jury retired to deliberate, he didn't want to specifically ask, did you know this was going to happen? Yes, I know. You know that this is her choice. Yes, I know. So he never actually said I didn't do it. He said somebody else did. Somebody else did. Right. Which all you need is one juror to believe those words and believe the credibility on that videotape that went unchallenged at trial, the entirety of trial. And we have the record. The defendant was okay with it. We can't say that waiving an opening clause in a murder case is per se ineffective. Depending on the counsel, I think we can agree that it's unusual. It's most certainly unusual. But as we know, ineffective assistance of counsel cases are, yes, ineffective assistance of counsel cases are case-by-case basis, because specifically it would be unusual to waive in a double murder, something as serious as this, but when you see these facts and you have a record that the defendant agreed with her strategy, then I think that it's not unusual. This is what she was faced with. This is how she was going to defend her client to the best of her ability. And essentially, at the end of the day, the jury heard the defendant's words to those detectives that he didn't do it. Somebody else did. What about the prejudice the defendant is supposed to be showing us here at this point? I believe that even if there was an argument that was made rebutting the circumstantial evidence, I still think that circumstantial evidence was overwhelming. And it wouldn't affect the defendant would not have been prejudiced. I think when you look at it from a timeline perspective, and, yes, there is a lot of testimony and stipulations about the money that was taken and the steps that were, I think when you put them all together, that just days after moving in, the sealing of the identity begins. At the beginning of the trial, in opening statements, when the defense lawyer explained to the jury what they would hear, and she also said you're going to hear from the defendant, he won't testify, but you will hear from him or something to that extent. She didn't say, and we may not, we don't have to make a closing argument either. She didn't tell them that. I do not believe she did. Because that's the kind of thing I think your opponent basically took issue with, the manner in which it was done. So the jury wasn't prepared for this. All of a sudden, the defense lawyer stood and said I have no argument, suggesting, according to defense counsel, that the client is guilty. So would it have been helpful for her to have said in opening statements, he doesn't have to testify, we don't have to make a closing argument, the State has to prove their case beyond a reasonable doubt, and if they don't do that, you have to acquit them. Would that have been a different or a better strategy? I mean, certainly for appellate purposes, it looks like it would be a better strategy. Things always look better in hindsight. Of course. But as we know that trials evolve, and trial strategies have to evolve. Sometimes there's been cases where defense attorneys have promised that their defendants are going to testify with what they will say on that stand, and when they don't, that's not ineffective. Here what we have is a closing argument that evolved from essentially the trial and then also what the State didn't say in their opening statements. So, sure, it would have been helpful to include that, but also there's jury instructions that do cure, you know, closing arguments aren't evidence. So even if there was a closing argument, we're still back to where we are here, and that's if this Court found that this wasn't a sound trial strategy, then we're still looking at the prejudice bomb, which is the people submit that with this amount of evidence, this defendant can't overcome simply because the defense counsel decided to take a different strategic check than what she would take on appeal and waive her opening or waive her closing argument. Counsel, what do you think about the Wilson case that says, I don't know if it's a holding, whatever it is, that it's a rare case that there should be no closing argument? In that case, there's three different eyewitnesses who I believe they were both inconsistent and had conflicting testimonies, and I think in that case, we're not dealing with something where a defendant's wholesale defense comes in completely unchallenged. We're talking about witnesses that are putting defendants in different places than where the other person said they would be, and I think it's necessary for a jury to draw that road map of why this person is wrong and why this person is wrong and why this person is wrong. I think if you – the argument that could have been made, if there is an argument that could have been made and the people submit that the trial strategy was sound, I think it's still not going to overcome that prejudice prong. Essentially, when we look at all the evidence that was against the defendant, and certainly circumstantial evidence, but circumstantial evidence built upon itself leads to reasonable doubt, and that's what the jury believed. At the end of the day, I mean, this defendant, it's a litany. I mean, I know the jurors have read the record, but, I mean, it is circumstantial. It is – I mean, it just – I mean, even when you go back to, like, the morning of the murder, at 4 a.m., their roommate was awakened by a defendant knocking on the door twice and forcing his way in. At that moment, that roommate knew something was wrong and fled, not even using the bathroom, just fled. And then 14 minutes later, there's a 911 call in which a defendant has, you know, said that he was stabbed. We know that these victims died of numerous stab wounds. And throughout that ordeal of his own stabbing, the story changed from three Hispanic males to one entity, some people to another entity, to two assailants with another, and finally three assailants with police officers. And then we know that the defendant returned home. He was seen at 8 a.m. by a neighbor. And from the video and as well as the crime scene photos, we know that that house was ransacked. And prior to Kathy and Gary's death, the defendant lived in the living room. That was all he had access to. After their deaths, their rooms were completely trashed, aside from the fire and water damage. I think it's safe to say that there was no DNA tying, whether it be a droplet or drops of blood. Regardless, that was a shared back staircase. It could have been from anyone at any time. In fact, the fire department ascended that staircase. Counsel, can I ask you, is there a constitutional right to close an argument? Is there a constitutional right? I think there's a constitutional right to effective assistance. And if counsel in that moment decides that in the whole of the trial, the best strategy for their defendant is to foreclose, ripping apart their entire theory of decades on rebuttal, then I think that is effective assistance of counsel. Are we concerned at all about the trial court when it was disclosed that he was not going to testify and he understood his lawyer was not going to give a closing argument, that the courts have admonished him differently? Should we be concerned about the trial court? No, I think it's a learned trial court. I think at this point they understand that, again, this is a major, major case, and that a lot of time and effort went into prosecuting this matter and defending this matter, and that if the trial court left this off the record, then we might be in even a worse spot than we are, that the people can tell that it is apparent from the record what this trial strategy was because the defendant agreed with it. Had that not been there, the trial court not done that and given us this opportunity, then we might be in sort of a post-conviction land where it's not apparent from the record what happened. But because the trial court asked the question, conferred with the defendant that, yes, this is your choice and you were aware of it or not your choice, but you were aware of it and okay with it, then I think they took the opportunity to foreclose that issue for us and made it apparent that this was a trial strategy and one we can fret about. The people contend that there was no effective assistance of counsel here. This trial strategy was more than reasonable given the circumstances and the evidence, and the evidence was overwhelming. Had there even been a closing argument, this defendant would have suffered no prejudice due to the evidence against him. If there are no more questions. No. Thank you. Thank you. Thank you. Ms. Hartman, brief rebuttal, please. Yes, Your Honor. Just to remind you, Emily Hartman from the State Appellate Defender for Dohan Pratt. Just three points. First, regarding whether counsel referenced that the defense didn't have to do a closing argument in her opening statement, Your Honor remarked that the jury wasn't prepared and didn't know that counsel didn't have to do the opening. In fact, I just wanted to remind the Court that, in fact, the jury was prepared for the opposite because the Court said, now you're going to hear from the defense right before counsel stood up and said, I have no argument. So they actually thought they were going to hear from the defense and they expected to hear from the defense. Regarding trial strategy, sometimes in a trial, a strategy might evolve given the evidence that comes out, but there were no surprises in this case. This is documented evidence, for the most part, stipulations, video that counsel had reviewed, evidence that was supported by financial records. So counsel, you know, changing the strategy doesn't make sense given that counsel knew everything that was coming out. And with regard to the strategy to foreclose rebuttal, in a case like this, the State argued to the jury and the jury heard from the State. And if counsel had given a closing argument and then the State rebutted the argument, the jury would have been able to pick which version they wanted. They believed more. Whose argument they really felt was more correct. But it's not evidence. It's argument. It's argument, correct. But if either side made argument, the jury could have been persuaded by one side more than the other. But in this case, they only heard from the State. So there was they didn't have any other choice. They didn't get anything from the State. Well, she would have to criticize or somehow comment on the witnesses that were offered by the State or the video or some other State witness, right, for evidence? I'm sorry, I didn't hear the first part. She would have to comment on then in her closing about all State evidence, all the State's evidence. So the State argued the inferences it wanted to draw, and counsel could have argued no, you know, draw these other inferences instead. So in that case, the rebuttal would have been pretty much the same as the opening, though, to just go back and say no, draw these inferences instead. Denying rebuttal in a case like this, though, where the jury just, you know, there's no evidence at all, and just to stand up and say I have no argument, the jury doesn't have a choice but to believe the State's version of events, and they don't have anything from defense counsel to guide them. I don't know how there was any chance of getting, of securing an acquittal, even a small chance, more than negligible, but, you know, I don't know how there was any chance when you get up and say I have no argument. Further reasons stated today and in Mr. Pratt's opening brief, Mr. Pratt requested that this Court reverse his conviction and remand for a new trial. Thank you very much. Thank you very much. Thanks to both sides for spirited and thorough arguments. This matter will be taken under advisement, and the Court will be adjourned for a brief recess.